## ESTES v. BROWNING.

A vendee, by executory contract, who, after having paid part of the purchase money, refuses to go on with the contract, forfeits the amount already paid; and the vendor may bring suit and recover the land agreed to be conveyed.

To entitle the purchaser to recover back the deposit or a part of the consideration money, he must put the vendor in default by tendering the balance of the money, and demanding a conveyance.

The rule that an administrator must plead the statute of limitations where it will defeat an action against the estate, is subject to exception where such plea would forfeit a more valuable right; for example, where the notes sued on were given in an executory contract for the purchase of land. (It was probably deemed apparent in this case, that the completion of the purchase would have been beneficial to the estate; and nothing was said as to the rule, in case it were not so apparent.)

The vendor, in an executory contract, has superior right to the land, until the purchase money is paid. This right is not affected by either the default of the vendee or his death. It can be forfeited by the vendor's own default. If he refuse compliance with his stipulations, they may be enforced or the vendee may rescind the contract and claim the restoration of the purchase money advanced.

We have no forms of action; and if, upon the facts stated, the plaintiff be entitled to recover, he must have judgment.

The trespass may be waived, and suit be brought for the value of the use and occupation.

Where the vendee, in an executory contract for the sale of land, fails to pay the purchase money according to the contract, and the vendor brings suit to recover the land, the vendee, if he can present any equitable considerations in excuse for his negligence, may offer to pay and pray a conveyance.

Where A contracted, in 1839, to convey to B a tract of land, upon the payment of two notes for the purchase money, at one and two years; and B died in 1845, having made several payments; and his administrators rejected the notes as claims against his estate, they being barred by the statute of limitations, and A sued the administrator, who was in possession, to recover the land, and did recover it, by judgment of the District Court, affirmed on appeal; and A then sued the administrator who was in possession, for the use and occupation of the land, from the date of the recovery of the land in the District Court; the Court said, that as the vendor had acquiesced in the delay of the vendee, during his lifetime, by receiving payments, and as the administrators had mistaken their duty in rejecting the claims, the latter might set up the original contract, in this suit, and pray a specific performance, by the vendee, upon payment of the purchase money. (Nothing was said as to the effect of the judgment in the former suit.)

Appeal from Washington. Suit brought April 22nd, 1850, by Estes against W. A. Browning, for the recovery of four hun-

dred dollars for the use and occupation of a tract of land, from the 28th of May, 1847, to the 1st of January, 1850. Browning answered, that the land was held jointly by himself and Asa M. Lewis, as administrators of Nathan P. Browning, deceased, and prayed that Lewis might be admitted as a co-defendant; and thereupon Lewis and Browning answered jointly. The facts were, that in 1839, Estes contracted to sell to N. P. Browning the land for the use and occupation of which this suit was brought, Browning giving two notes, one at twelve months and the other at two years, receiving a bond for title to be made as soon as the purchase money should be paid. Browning made various payments, amounting to about one-half the purchase money and died in 1845, having made valuable improvements. In August, 1846, the notes were presented to the administrators of Browning, the present defendants, and were rejected. At the Fall Term, 1846, Estes sued W. A. Browning, who was then in possession of the land, for its recovery; and a few days afterwards, to the same Term, sued the administrators to establish the notes as a valid claim against N. P. Browning's estate. To the last named suit, the defendants pleaded the statute of limitations; and the plaintiff dismissed it. At May Term, 1847, Estes recovered judgment against Browning, in the other suit, which was affirmed on appeal to the Supreme Court, at December Term, 1849, reported in 3 Tex. R. 463. W. A. Browning had remained in possession of the land until January 1st, 1850, and this suit was brought to recover the value of the use and occupation from the date of the recovery in the District Court. The defendants pleaded in reconvention the value of the improvements, and the money paid by N. P. Browning, their intestate. The plaintiffs replied the judgment in the former action, in which the same matters were in controversy. The Court charged the jury, in substance, that the plaintiff could not recover, unless he showed a contract between himself and W. A. Browning, otherwise Browning being a mere trespasser, and not responsible in this form of action; and that the de-

fendants were entitled to recover back the purchase money, with interest. The verdict was that the plaintiff had no cause of action, and that the defendants recover the sum of $3701 95, the value of the improvements, and the money paid. Judgment accordingly, from which the plaintiff appealed.

*J. Willie*, for appellant. I. It follows from the case of Browning v. Estes, 3 Tex. R. 463, that the administrators ought to have allowed the claims against their intestate, for the purchase money of this land, unless they were prepared to prove, when called to account for having failed to do so, at the suit of an heir or creditor, that it was more for the advantage of the estate to reject the claims, thereby rescinding the contract, and forfeiting the money paid, than to allow the claims and complete the purchase.

II. The charge of the Court, to the effect that the defendants were entitled to recover back the purchase money and the value of the improvements, was manifestly erroneous. Estes had never been in default. Vendee alone had been in default. (14 Johns. R. 363.) The administrators could not have sustained the plea in reconvention, even if it had been filed, where it should have been filed, if at all, in the former suit, to recover the land. (3 Tex. R. 463; Ketchum v. Evertson, 13 Johns. R. 359; Ellis v. Hoskins, 14 Id. 363; Benedict v. Lynch, 1 Johns. Ch. R. 370; 5 Ves. 718.)

III. Much less can they sustain it in this suit, which is brought to recover the value of the use and occupation, since the date of the recovery in that case, in the District Court. The judgment in that suit was pleaded and proved, and settled the rights of these parties. Unless it be overruled, it is fatal to the claim here set up by the appellees. To sustain this judgment would be equivalent to deciding that one of the parties to such a contract, may, at any time, refuse a compliance with it, and by refusing to pay the balance due, acquire a right to recover what has been paid.

IV. The charge of the Court, that Estes could not recover

in this form of action, unless he showed a contract with Browning, was erroneous. We have no distinction as to forms of action. (2 Tex. R. 206; 3 Tex. R. 214.)

*J. Sayles*, also, for appellant.

*Webb & Oldham*, for appellees. I. The notes being barred by the statute of limitations, the administrators had no authority to allow the same, as legal demands against the estate; and a payment by them would have been a devastavit. In support of this proposition the following authorities are relied upon. (Patterson v. Cobb, 4 Flor. R. 481; Fisher v. Tucker, 1 McCord's Ch. R. 175; Peck v. Potsford, 7 Cowen R. 180; Richmond, Adm'r v. Petitioner, 2 Pick. R. 567; Rogers v. Rogers, 3 Wend. R. 517; Thompson v. Peters, 12 Wheat. R. 565; 6 Pet. Cond. R. 649.)

It follows most clearly from the above proposition, that the administrators by interposing the statute of limitations to the claim, did not thereby place the vendee in default, and subject the estate to a forfeiture of the purchase money paid, and a loss of the improvements made upon the land. (Pickett v. James, 2 Humph. 556; Coles v. Kelsey, 2 Tex. R. 541; Dudley, R. 119; 2 Bailey R. 92; 2 Aik. R. 349; 1 Watts, R. 271.)

II. Again, the vendee (and it is believed that his representative would be bound by the same rule) has no right to sue for a specific performance, before the vendor is in default. (Sug. on Vend. 181; 5 Ala. R. 604.) The administrators, in this case, had no right to tender the purchase money, and demand a conveyance; and could not, therefore, put Estes in default, so as to authorize them to sue for a specific performance. It is true, as a general rule, that if a vendee, after having paid part of the purchase money, refuses to go on and complete the contract, he forfeits the amount which he may have already paid; and the vendor may bring ejectment and

recover the lands agreed to be conveyed. (Ketchum v. Evertson, 13 Johns. R. 359; Green v. Green, 9 Cow. R. 46; Rounds v. Baxter, 4 Greenl. R. 454.) But it is contended that this rule applies only to a case, where the vendee may complete or abandon the contract, at his discretion, or where a specific performance may be decreed against him; it is only in such cases that the rule is so laid down.

III. This Court, in the previous case between the present parties, held, that, inasmuch as the administrators of Browning had refused to pay the balance of the purchase money, because the same was barred by the statute of limitations, Estes might treat the contract as rescinded and recover the land. (Browning v. Estes, 3 Tex. R. 463.) The reasoning of the Court, as to the hardship on the vendor, to lose the balance of the purchase money and not recover the land, is respectfully invoked for the vendee in the present case.

The administrators cannot sue for specific performance, and for a title to the land, without first putting the vendor in default, by demanding a title and tendering the purchase money. They cannot tender the purchase money, without rendering themselves liable for a devastavit, because the debt has been extinguished. They cannot now sue for a specific performance of the contract, because the contract has been rescinded by the judgment of this Court, and possession of the land has been restored to Estes. The only question that remains to be settled is this, Shall the vendor be entitled to rescind the contract and recover possession of the land, as against the administrators, when their acts have been according to law, and they be precluded from recovering the purchase money paid, and for the value of the improvements made upon the land? It is only in cases in which the vendee pays part of the purchase money, and refuses to complete the contract, that he subjects himself to a forfeiture of his deposit. He must be in default. In consequence of the legal disabilities, resting upon the administrators, they were unable to complete the contract entered into by their intestate. The vendor has therefore aban-

30

doned the contract, and recovered the land sold. The administrators are certainly not without remedy. (Griffith v. Fred. Co. Bank, 6 Gill. & Johns. R. 424; Conner v. Henderson, 15 Mass. R. 319; Fay v. Oliver, 20 Verm. R. 118; 9 U. S. Dig. 24; Keltner v. Keltner, 6 B. Mon. 40; Barbour v. Morris, 6 B. Mon. 120.)

When circumstances are such that the purchase money cannot be paid for a length of time, as if the purchaser die or become bankrupt, before the contract can be carried into effect, the vendor is entitled to have the contract rescinded. (Sug. on Vend. 288.)

In Vermont a contract cannot be rescinded by one party, for the default of the other, unless both parties can be placed in the same situation they were before the contract was made. (Fay v. Oliver, 5 Washb. 118; 9 U. S. Dig. 24; Hammond v. Buckmaster, 7 Washb. 375; 11 U. S. Dig. 19, Sec. 82.)

HEMPHILL, CH. J. This is a suit, by James D. Estes against Wm. A..Browning, to recover rent for the use and occupation of a tract of land. Asa M. Lewis prayed to be made a party defendant; and he, with Browning, answers that they took possession of the land, as administrator of N. P. Browning, deceased. They then made various allegations, relative to the acts of the plaintiff and of the deceased, in and about the purchase of the said land from the plaintiff; and the plaintiff avers several matters by way of replecation to these allegations.

But the history of this transaction can be ascertained more satisfactorily from the report of the former suit between these parties, in 3 Tex. R. 462, than from the allegations of the contestants. From this, it appears, that in 1839, the plaintiff sold this land to the deceased; took his two notes for the purchase money; and gave bond for title, to be made on payment of the notes. Browning made various payments on the notes, and remained in possession until his death in 1845. The bond was returned as a part of the estate of the deceased.

The administrator having refused to allow the balance due on said notes, suit was brought for its recovery. The administrators pleaded the statute of limitations and the plaintiff dismissed his suit.

The plaintiff had also, in the meantime, brought his action of trespass to try title; and he recovered judgment for the land.

This is an action for the rent of this identical land; but by the pleas in reconvention, the controversy has turned principally on the question whether the defendants, as administrators, are entitled, under the circumstances, to recover back from the plaintiff, the partial payments which the deceased, in his lifetime, had made, of the purchase money.

It is admitted by the appellees, in their ingenious and able argument, that as a general rule, a vendee who, after having paid part of the purchase money, refuses to go on with the contract, forfeits the amount already paid, and the vendor may bring ejectment and recover the land agreed to be conveyed. That the law is correctly stated in this admission of appellees, cannot be questioned.

This doctrine is strongly—perhaps too strongly—laid down in Ketchum v. Evertson, 13 Johns. R. 365. It is stated there, as a general rule, that a party who has advanced money or done an act in part performance of an agreement, and then stops, and refuses to proceed to the conclusion of the agreement, the other party being willing to proceed and fulfil his stipulation according to the contract, has never been suffered to recover for what has been thus advanced or done; and that it would be an alarming doctrine, that parties might violate their contracts because they choose to do so, and make their own infractions the basis of an action for money had and received. In the case above cited, the vendee had paid part of the purchase money, and refusing to complete the contract, had brought his action for the recovery of the payment already made. The vendor had also subsequently sold the land to another person; but it was held by the Court, that that did not alter the case.

The vendee had renounced the contract and refused to fulfil his stipulations; and the vendor was not bound to keep the land; nor did his sale to a third person subject him to an action by the vendee.

The principle of this case was again asserted in Ellis v. Hoskins, 14 Johns. R. 364; and in Hudson v. Swift, 20 Id. 26, it was held that to entitle the purchaser to recover back the deposit of a part of the consideration money, he must put the vendor in default, by tendering the money and demanding a conveyance.

But, although this is the well established doctrine, and it is so admitted by the defendants, yet it is urged that the rule has no application under the circumstances of this case; that the defendants were administrators, and, as such, were compelled to reject the demand for the balance of the notes, when presented, and to plead the statute of limitations to the suit for its recovery; and that had they allowed these notes as legal demands against the estate, and had they not pleaded the statute, they would have incurred a personal liability to that amount, as for a devastavit.

That, as a general rule, administrators must avail themselves of the statute, where the demand is barred by limitation, is admitted. It has been recognized and adopted by this Court; and administrators would, if they transcended the rule, subject themselves to personal liability. But this rule, as most other general principles, has its exceptions. It is based on sound policy. Administrators, generally, cannot know, with certainty, whether a demand against the deceased has been paid or not. This is especially the case, where the demand has become stale or obnoxious to the laws of limitation, from the lapse of time. As a matter of policy, then, and as one very beneficial to estates, administrators are required to set up the statute, in cases to which it applies. But this rule has no force in cases where its application would be detrimental, perhaps ruinous to the estate. It is a general principle, that where the reason of a rule ceases, the rule itself should cease;

and certainly, the rule is inapplicable, in cases where the plea of the statute, although it might defeat the recovery of all or a portion of the purchase money of a tract of land, as against the deceased vendee, would also have the disastrous effect of defeating the vendee's rights or title to the land. No sound administration of the law would expose estates to so much hazard, for the mere purpose of enforcing a general principle which was designed, and generally has the effect of being to the benefit of the estates.

There are other general principles, of as much or more cogency, in reference to sales of land, than the rule requiring administrators to plead the statute of limitations; and one is, that the vendee, where the vendor is not in default, cannot obtain title without the payment of the purchase money, nor can he recover partial payments which he may have made, if he refuse to complete the contract.

The wisdom and policy of this rule are too manifest, to require the adduction of any reasons in its support. It is commended by every consideration of justice, honesty and fair dealing, between man and man. Its effect is to declare that no man shall claim title to the land of another, without payment of the price agreed upon; nor shall he who refuses performance, make his own default the ground of rescission, nor be thereby entitled to compensation for part performance, or for recovery of such portion of the purchase money as he had already advanced. The fact that one of the parties dies, before the completion of the contract, can have no effect upon their relative rights. It is admitted that the vendee had no other alternative, than to pay the whole of the purchase money or lose the land and the payments he had made. His death cannot impair the rights of the vendor, or vest in his estate, rights which he did not himself possess. The act of Divine Providence, by which one is removed, is not, in contemplation of law, a disssolution of the contract. The deceased lives in his representatives. They have his rights and no other; and though they have special rules for their

guidance, that their administration may be beneficial to creditors, heirs, legatees, &c., yet they are not to be so applied, as to work mischief, and under the guise of screening the estate from debt, expose it to the loss of property, greatly exceeding in value, perhaps, the demand from which it had been relieved.

The vendor, in an executory contract, has superior right to the land, until the purchase money is paid. This right is not affected by either the default of the vendee or his death. It can be forfeited by the vendor's own default. If he refuse compliance with the stipulations, they may be enforced or the vendee may rescind the contract and claim the restoration of the purchase money advanced. But neither the default of the vendee, nor that of his representative, can be the basis of such rights.

It cannot be converted into an instrument by which the land may be retained, or the purchase money paid may be recovered.

The judgment, therefore, for the recovery of such payments, is erroneous and must be reversed.

In one of the instructions, the jury is charged, in effect, that the plaintiff must show some contract between himself and Browning, otherwise he cannot recover rent in this form of action. This we apprehend to be erroneous. We have no forms of action; and if, upon the facts stated, the plaintiff be entitled to recover, he must have judgment. Even if Browning were a trespasser, yet damages for the trespass may be waived and the value alone of the use and occupation demanded.

It is to be regretted that the defendants did not, in the original suit, proffer payment of the balance due, and demand title of the plaintiff. This is the only relief to which they are entitled, and the only condition upon which they can be extricated from the embarrassments occasioned by their own default.

And it is further to be regretted, that they did not, in this

suit, by their plea in reconvention, avail themselves of the opportunity to tender performance and demand title. Their refusal and neglect are diminishing the chance of any relief, and if persisted in, must terminate in entire defeat.

The cause will be remanded, however, when the defendants will have an opportunity of amending their pleading and of seeking such aid as they can obtain.

Should the necessary amendments be made, the principal question will be whether the defendants are not by their default and laches debarred from any relief, and from claiming, under any circumstances, specific performance.

This subject is elaborately reviewed by that distinguished jurist, Chancellor Kent, in the case of Benedict v. Lynch, 1 Johns. Chan. R. 370; and the rule, as deduced from the authorities, is laid down by him, to be, in substance, that where a party who applies for specific performance, has omitted to execute his part of the contract, by the time appointed for that purpose, without being able to assign any sufficient justification or excuse for his delay, and when there is nothing in the acts or conduct of the other party that amounts to an acquiescence in the delay, the Court will not compel a specific performance. That time is a circumstance of decisive importance, in these contracts, but it may be waived by the conduct of the other party; that it is incumbent on the plaintiff, calling for a specific performance, to show that he has used due diligence, or if not, that his negligence arose from some just cause, or has been acquiesced in, &c. In the case cited, the vendee had entered on the premises—made extensive improvements, but neglected to make payment, according to the contracts. The vendor about two years after the first default, sold the land to another; and the vendee, having subsequently tendered the whole of the purchase money, filed his bill for relief and specific performance, which was refused and the bill dismissed with costs.

In the case of Hatch v. Cobb, 4 Johns. Chan. R. 559, it appeared that the plaintiff had made default in payment, ac-

cording to the terms of the contract; that the defendant had accepted one payment after default, but that about six months thereafter, he had repeatedly called for payment, and gave notice that if the plaintiff did not pay, he would be obliged to assign his interest in the land; no payment being made, he assigned over his interest to a third person; and the plaintiff, with a knowledge of that fact, made a tender of the balance due on the contract, and filed his bill for performance, &c. This was refused, on the ground that the vendor had, by sale to another disabled himself before suit was brought, and that this was known to the plaintiff; but had the vendor not sold, it was intimated that the point would have deserved consideration, whether the vendee would have been entitled to assistance, when no accident, fraud or mistake had intervened to prevent the performance of the contract on his part, and when, after indulgence, he had been twice required to make payment and had omitted to do it.

These cases will suffice to show the grounds and the circumstances, under which Courts of equity will afford relief to vendees who have made default, but subsequently tender the whole of the purchase money or a full compliance with the obligations of the contract. They must present some equitable considerations in excuse for their negligence, or relief will not be granted.

In the case under consideration, the vendee had, in his lifetime, made but partial payments. But these having been accepted, the delay was acquiesced in, and the default consequently waived. The only question is, whether the acts of his representatives are such as to have precluded them from relief, provided they should ever seek the only aid which is attainable through the law. And we are of opinion that notwithstanding there has been great delay, yet, that under the circumstances, they are entitled to aid, under such conditions however, as will do justice to the other parties in this controversy. The duty of the administrators, in the premises, was not free from doubt. The action taken by them was, as they believed,

the only alternative in their choice. The circumstances were novel in their character; and the law applicable to them, had not been well defined. It appears now, that they misapprehended their duty; but the mistake and their consequent neglect are not such as should defeat their rights and deprive them altogether of relief.

The other party, in consequence of their default, has incurred considerable expense in the assertion of his rights. For these, he should, at least to some extent, be reimbursed. Most certainly the costs of the judicial proceedings, in which he has been involved, should be discharged by the defendants. How far his other expenses shall be allowed, can be decided when the question is directly presented.

It is ordered, adjudged and decreed, that the judgment be reversed and the cause remanded for a new trial.

Reversed and remanded.