CHICAGO, R. I. & G. RY. CO. et al. v. LIBERAL ELEVATOR CO. et al. (No. 889.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 5, 1916. Rehearing Denied Jan. 26, 1916.)

ACTIONS ⬅57—CONSOLIDATION—MULTIPLICITY OF SUITS.

Defendants, who received many shipments of coal from the mine over plaintiffs' railroads, claimed numerous shortages, there being differences between the mine weights and the weight of the coal when received. Plaintiffs claimed that the differences were in most cases due to evaporation of the water in the coal or to differences in scales. Held, that as a judgment in one action would in no wise be conclusive in another, defendants will not be by injunction required to consolidate their several suits on the principle that a multiplicity of suits should be avoided.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 632–675; Dec. Dig. ⬅57.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by the Chicago, Rock Island & Gulf Railway Company and another against the Liberal Elevator Company and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

C. E. Gustavus, of Amarillo, and N. H. Lassiter, of Ft. Worth, for appellants. Reeder & Dooley, of Amarillo, for appellees.

HENDRICKS, J. The appellee the Liberal Elevator Company sued the appellants, the Chicago, Rock Island & Gulf Railway Company and the Chicago, Rock Island & Pacific Railway Company, in the justice court of Potter county, Tex., on five different alleged causes of action, ranging in amounts involved from the sum of $2.75, the smallest, to $7.17, the maximum, and in each suit asked for $10 attorney's fees. Each of said suits is based upon an alleged loss and shortage of coal shipped by the elevator company as consignor, and received by it as consignee. Four of the said shipments have a common origin, to wit, Koehler, N. M., and one from Van Houten, N. M.; said shipments being transported over the lines of said railway company as connecting and delivering carriers. Two of the shipments from Koehler had a common destination, to wit, Kingsdown, Kan.; another was consigned to the elevator company at Tyrone, Okl.; and the fourth to the same consignee, at Liberal, Kan. The shipment from Van Houten, N. M., was also destined to the elevator company at Tyrone,

Okl. One of said suits was for an alleged loss and shortage of 1,180 pounds of coal; another for 1,780 pounds; two for 2,600 pounds each; and one alleging a loss of 3,300 pounds. The appellants railway companies made a motion in the justice court to consolidate said suits, which was overruled by the justice of the peace. This particular suit is instituted by the appellants, alleging in detail the character of the justice court cases filed against them, seeking to restrain the prosecution of the five separate suits until consolidated, asserting that said cases should be tried as one; that economy of time, expenses, and costs of said suits would result; and that the appellee herein the Liberal Elevator Company, by filing said separate suits, was seeking to annoy, "harass, and duress the appellants into a settlement of said pretended claims." Quoting from appellant's brief, it is alleged that the plaintiff in the justice court suits—

"was relying for recovery upon the difference in the mine weights and weights at destination, and that any such difference in weights could be due to difference in scales, evaporation of dampness after the coal was taken from the mines, and that no part of the coal was taken 'from the car. * * * The Liberal Elevator Company answered, denying that there would be any saving in consolidating the cases, and that instead of simplifying, there would be confusion, and that no fraud was attempted against appellants."

At the trial upon the merits it was shown that the claims of loss are based upon the difference in weights exhibited in the bills of lading, and what the contents of each car weighed at destination. It is not clear, but we infer that these weights at the origin of shipment were mine weights adopted by the railway company and incorporated into the bills of lading, and that the weights at destination were made by the Liberal Elevator Company, thus exhibiting the difference and loss contended for. A coal dealer, as a witness for the appellants, testified that he had been in the coal business in Amarillo for about 12 years, and was acquainted with the New Mexico mines and knew how the coal was there weighed up; that in accordance with his experience, not one in 20 would hold out in weight with the mine weights, and that the usual shortage was from 1,000 to 2,000 pounds on each car. He also said that when the coal comes out of the mines some of it is dry, and some of it is damp, and ordinarily is loaded and transported in open top cars, usual with such shipments.

Each of the litigants, plaintiffs and defendants in the justice court, in the separate suits mentioned, expected to maintain their rights in that court with reference to the evidence, by deposition testimony, except that the railway companies expected to use personal testimony of two or three witnesses, but for what purpose is not shown. The theory of appellants, of course, is based upon the proposition of a multiplicity of suits, and cites the case of Railway Co. v. Dowe, 70 Tex. 6, 7 S. W. 368, as sustaining authority for the maintenance of the action. In considering this case in connection with another case between the same parties (70 Tex. 2, 6 S. W. 790), it seems that a contractor of the railway company issued quite a number of time checks to his employés, and which were indorsed in blank by them, and came into the possession of Dowe. Dowe had instituted a number of suits in the justice court and obtained judgment thereon, all of which were nonappealable, and the railway company had previously sought to restrain the execution of those judgments. This particular injunction, though stating the case as one of a great hardship, was denied by the Supreme Court, on the theory that a court of equity would not interfere to control the proceedings of other courts where there had been mere errors of law or judgment.

In the second suit for injunction, restraining Dowe from instituting 30 separate suits, each of which, but one, was under $20, we assume that the issues in each of the threatened suits were the same; that is, the liability of the railway company for the different checks issued by the contractor and the defense of the statute of limitations interposed by said railway company. Justice Gaines said:

"It is * * * laid down that where one party holds several claims against another, growing out of the same or similar transactions, and depending for their determination upon the same questions of law and fact, equity will enjoin separate suits upon the demands, provided one suit has been tried and determined in favor of the complainant in the bill."

The element of a favorable determination, to be shown by the complainant in the bill as to one suit, Justice Gaines thought unnecessary, but, as we interpret the opinion, the remaining enunciation of the principle was the controlling one applicable to the issues that would have been contested in the threatened suits.

Justice Gaines cites section 254, Pomeroy's Equity Jurisprudence, as authority for that principle, which is stated by the latter as follows:

"In the second branch of the same class, [where] the single defendant has brought a number of simultaneous actions at law against the plaintiff, all dependent upon similar facts and circumstances, and involving the same legal question, so that the decision of one would virtually be a decision of all the others, a court of equity may then interfere and restrain the prosecution of these actions, so that the determination of all matters at issue between the two parties may be brought within the scope of one judicial proceeding and one decree, and a multiplicity of suits may thereby be prevented."

We have here the same plaintiff and the same defendants. The Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913, § 8592]), in effect when these contracts matured, and rights accrued, makes the defendants liable, if the negligent loss has occurred.

irrespective of any other considerations. The application of legal principles for the purpose of ascertaining the liability, or the defenses, in issue in the justice court, are probably simple. The fact remains, however, that the demands are independent, and that the facts based upon each individual shipment, while probably similar as to some phases, are distinct. The petitioners say the loss is not due to any of the negligence of the railway companies, and if the difference in weights is not attributable to the difference in scales, affording a different test as to weights, there has been an evaporation of dampness in the coal after the same had been weighed at the mines and before the weight of same at destination. In the justice court plaintiff will have to prove the facts as applied to each separate shipment, and the contest injected by the defendant's defenses is based upon an alternative condition of facts, one or the other, which might be proved as to one or two, but not as to all, of the shipments; or one shipment may be dry coal and another of damp, which exhibits in this action a showing of a variation of testimony and difference in results as applied to each individual demand which might ensue, and as to which a jury might, to some extent at least, become confused. A judgment in each separate suit, if not consolidated, would certainly not be res adjudicata, which, however, we, of course, do not apply as a test, except argumentatively as presenting the individuality, in law, of the separate actions. We think the Dowe Case does not apply.

The case of Piano Co. v. MacMaster, 51 Tex. Civ. App. 527, 113 S. W. 337 (writ of error denied by the Supreme Court), which is the next nearest case, apparently similar, or apparently analogous, cited by appellant, was a suit to enjoin five separate suits pending in two courts, of different justices of the peace, each, however, we assume, involved issues of law and fact dependent upon an entire contract, and whether the plaintiff or defendant in each of said separate suits had breached said contract. The case of Street Ry. Co. v. Mayor, 54 N. Y. 159, 162, 163, cited by Justice Gaines in the Dowe Case, was one where a city brought 77 actions in a justice's court to recover penalties for the violation of a city ordinance concerning the running of cars, each action for a separate penalty. The court said:

"The decision made in the one which is to be prosecuted will in effect be a decision of all of them."

There are other cases concerning a community of interest, and common violations, existing among a numerous body of persons, involving nuisances, riparian rights, fisheries, matters of taxation affecting the public, and other public burdens, and at times involving matters of private interest illustrated by the case, Fraternal Lodge v. Ray, 166 S. W. 48, where separate actions were brought by different members of the lodge solely to test the right of the lodge to put in force an increased assessment—all arising from a common source, involving similar facts and governed by the same rule of law, which, though different parties are affected, the rule against multiplicity may be invoked. There is no question but that the district courts of this state, by virtue of their residuary power, granted by the Constitution, where a power is not possessed by any other court, with the power to administer equitable rights, and apply equitable rules, would have the right, after the suits are filed, in a proper case, to compel the litigation in one suit, notwithstanding the statute with reference to consolidation of suits; but we do not think this is the character of cause in which it should be exercised. We are not attempting to declare a test, but we are convinced that if the rule depends for its successful application to cases, "depending for their determination upon the same questions of law and fact," as Justice Gaines said, it had been laid down; or, as Pomeroy expressed it, that the causes must be upon such similar facts and circumstances as "that the decision of one would virtually be a decision of all the others"—that plaintiff has not made such a case.

The judgment of the trial court is affirmed.